STATE OF WEST VIRGINIA

*v.*

DAVID LEONARD ADAMS

(No. 13854)

Decided September 26, 1978.

*Lawrance S. Miller, Jr., Dailey & Miller* for plaintiff in error.

*Chauncey H. Browning,* Attorney General, *Gregory E. Elliott,* Assistant Attorney General, for defendant in error.

HARSHBARGER, JUSTICE:

David Leonard Adams, while driving a friend's car, was stopped and questioned by police who knew he had no valid West Virginia operator's license. He behaved erratically and was given a sobriety test,[1] and then was arrested for driving while intoxicated. He refused to take a "breathalyzer" test. At trial, the State introduced, over objection, evidence that Adams refused to take the test. He was convicted and brings this appeal.

The first question is, whether one's refusal to take the breath test can be admitted into evidence in a subsequent prosecution for drunk driving. The second issue is whether the State can introduce evidence showing that a defendant has prior criminal convictions.

*W.Va. Code,* 17C-5A-1, known as the Implied Consent Law, provides:

> Any person who drives a motor vehicle upon the public streets or highways of this State shall be deemed to have given his consent by the oper-

---

[1] The police had him try to walk a straight line, touch his nose with his finger, and such.

ation thereof, subject to the provisions of this article, to a chemical test of either his blood, breath or urine for the purpose of determining the alcoholic content of his blood.

Section 3 of the law provides for penalties for refusal to take a chemical test (except the blood test—refusal to submit to it does not incur penalty) if 1) a law enforcement officer has reasonable grounds to believe that a person has been driving a motor vehicle while under the influence of intoxicating liquor, 2) the person is lawfully placed under arrest for driving while "under the influence," and 3) the person is told that his driver's license will be suspended for a period of six (6) months if he refuses to submit to the designated test. However, Section 3 also provides:

> If any person under arrest as specified in Section one [§17C-5A-1] of this article refuses to submit to the test finally designated in the manner provided in Section one [§17C-5A-1] hereof, no test shall be given ... *W.Va. Code*, 17C-5A-3.

So, there is a clear statutory right to refuse the tests, although to do so may subject one to loss of driver's license for six months.[2] This right, probably inspired by a legislative desire to protect citizens from corporal forceful testing, would be eroded if its exercise could be put into evidence in a later trial.

Also, to allow evidence of refusal to be admitted is, we believe, equivalent to allowing comment by a prosecutor about a defendant's failure to give evidence. In *State v. Boyd*, ___ W. Va. ___, 233 S.E.2d 710 (1977), we held that a prosecutor may not comment upon defendant's silence or failure to testify because the federal constitution's Fifth Amendment, and Article III, Sections 5 and 10 of the West Virginia Constitution, thereby lose their protective qualities.[3]

---

[2] *See, Jordan v. Roberts*, ___ W. Va. ___, 246 S.E.2d 259 (1978).

[3] *See, Griffin v. California*, 380 U.S. 609 (1965) in which the Supreme Court held that the Fifth Amendment forbids both comment by the prosecution on the accused's silence and instructions by the court that such silence is evidence of guilt.

Some jurisdictions with Implied Consent Statutes similar to our own allow evidence of refusal to be admitted. They reason that a defendant's refusal is probative because it indicates fear of the test result, *City of Westerville v. Cunningham,* 15 Ohio St.2d 121, 239 N.E.2d 40 (1968); or proves defendant's attitude and the circumstances of the crime, *State v. Durrant,* 55 Del. 510, 188 A.2d 526 (1963); or that reasons advanced by defendant for refusing to take the test go to weight rather than admissibility of the evidence. *Commonwealth v. Robinson,* 229 Pa.Super. 131, 324 A.2d 441 (1974).

The Ohio and Pennsylvania courts rely primarily on *Schmerber v. California,* 384 U.S. 757 (1966). There the defendant had been arrested for driving while intoxicated. A blood sample was withdrawn from his body at the direction of a police officer, despite refusal of the motorist to consent to the test. At trial both the test results and evidence of his protest were admitted.

*Schmerber,* however, did not reach the admissibility of defendant's useless protest because the evidence thereof was not objected to at his trial. The Court said the man's blood could be extracted from him and used against him. *See* footnote 9 of *Schmerber,* 384 U.S. at 765.[4]

We are not persuaded by the reasoning of the Ohio and Pennsylvania cases. Instead, we adopt the New York and Minnesota rules that admissibility of refusal evidence does not necessarily follow from *Schmerber.* The United States Supreme Court said in *Schmerber:*

> We hold that the privilege [against incriminating one's self] protects an accused only from be-

---

[4] *Schmerber* differs from our case in that the California law does not expressly provide the right to refuse these tests as does ours; and blood tests are expressly exempt from refusal consequences here. We commend our legislature's wisdom, exempting blood tests from the license suspension penalty of the Implied Consent Law, having grave doubts about *Schmerber's* correctness on the point that blood taken from a person and used against him, does not violate his Fifth and Fourteenth Amendment rights when it is taken without his consent.

ing compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature, [footnote omitted] and that the withdrawal of blood and use of the analysis in question in this case did not involve compulsion to these ends. 384 U.S. at 761.

The Court went on to say:

Since the blood test evidence, although an incriminating product of compulsion, was neither petitioner's testimony nor evidence relating to some communicative act or writing by the petitioner, it was not inadmissible on privilege grounds. 384 U.S. at 765.

*People v. Rodriguez,* 80 Misc.2d 1060, 364 N.Y.S.2d 786 (1975) held that although the results that were compelled are non-testimonial under *Schmerber,* refusal to submit to testing requires some form of communication or communicative act, which is testimonial. Hence, the court reasons, submitting evidence of defendant's failure to take a test violates his right against self-incrimination under the Fifth Amendment to the federal constitution.

In *State v. Andrews,* 297 Minn. 260, 212 N.W.2d 863 (1973), the Supreme Court of Minnesota held that admitting evidence which permitted a jury to infer that defendant had refused to submit to chemical testing was prejudicial error. It violated the accused's right not to be compelled in any criminal case to be a witness against himself. Moreover, the *Andrews* opinion discussed the *non sequitur* of the proposition that there is no constitutional right to have refusal evidence excluded because there is no constitutional right to refuse to submit to chemical testing.[5]

---

[5] The Andrews court, holding that admission of evidence of refusal violates a defendant's constitutional rights, said, quoting from Note, 78 Yale L.J. 1074, 1084: "... Evidence of a suspect's refusal ... is relevant to the crime charged only in its testimonial aspect, as the approximate equivalent of the statement, 'Because I fear that the examination will produce evidence of my guilt, I refuse to

We question the trustworthiness of evidence of defendant's refusal to submit to the tests. The basic reason a prosecutor desires to introduce such evidence, and the only real relevance of such evidence, is that the refusal indicates defendant's fear of the test results and his own knowledge that he is guilty.[6] But where there is no explanation of defendant's refusal offered, the evidence is untrustworthy because it does not prove that defendant was simply attempting to conceal the presence of alcohol. Defendant could have been afraid of the test itself and not the results;[7] or he may have distrusted the procedure or the competency of the testers.

Therefore, a criminal defendant's refusal to take tests to determine his state of intoxication per *W.Va. Code*, 17C-5A-1 cannot be commented upon or introduced into

permit it.' Therefore, the privilege against self-incrimination seems relevant. There remains the question of whether such testimonial evidence is 'compelled' for purposes of applying the fifth amendment standard. In one sense the testimonial action is obviously not compelled—the state is not ordering the suspect to *refuse* cooperation. But the state does compel a suspect to choose between submitting to a perhaps unpleasant examination and producing testimonial evidence against himself. The suspect's option to submit to a lawfully imposed burden instead of implicitly testifying against himself does not necessarily save the procedures: lifting a lawful burden—the examination—is in effect an inducement that casts doubt on the 'voluntariness' of the testimonial evidence thereby obtained." 212 N.W.2d at 864.

[6] *See, City of Monroe v. High,* 254 La. 362, 223 So.2d 834 (1969).

[7] *See, State v. Munroe,* 22 Conn. Supp. 321, 171 A.2d 419 (1961) wherein that court held:

The admissibility of the results of such tests depends on the application of the rules of evidence; and the failure to administer or the refusal to take such a test is of no probative value unless there are circumstances present, such as admissions by conduct, that would otherwise be admissible. Implicit in such testimony of refusal is the irremedial suggestion that had the test been given, the results would have been as nearly infallible on the issue of intoxication, proving either guilt or innocence of the accused, as scientific ingenuity could devise, and, thus, from a mere refusal to submit to such test, fairly and reasonably, could be derived an inference of guilt. With this basic assumption, we do not agree. The evidence objected to was incompetent for the purpose for which it was offered and should have been excluded. 171 A.2d at 424.

evidence by the state at his trial for driving while intoxicated.

The second assignment of error relates to evidence of the defendant's prior convictions and bad character brought out by the state in its case in chief. An officer was stating his opinion regarding defendant's state of intoxication. He was permitted to compare his observations of the defendant on the day of the arrest with defendant's behavior on other occasions when defendant had been an occupant of the county jail.[8]

One can hardly imagine better proof of prior conviction than a jailer's comments about a defendant's behavior when, previously, he had been incarcerated.

Case law in this jurisdiction provides that:

> " 'In a criminal trial, the state cannot introduce evidence, not connected with the crime for which the accused is being tried, for the purpose of showing his bad character, until the accused has first put his own character in issue by attempting to prove a previous good character.' Point 1, Syllabus, State v. Graham, 119 W. Va. 85, 191 S.E. 884." Point 5, Syllabus, *State v. McArdle*, 156 W. Va. 409, 194 S.E.2d 174 (1973).

---

[8] The testimony complained of is:

"Q. How long had you been acquainted with him?

A. When I first started working for the County Sheriff's Department, at that time or shortly thereafter Mr. Adams spent some time with us and on occasion from that time until today.

Q. Were you acquainted with his nature and demeanor when he was not drinking alcoholic beverages?

A. Yes, sir.

Q. What sort of person and his appearance did he display when he was not under the influence?

A. In my opinion when Mr. Adams was not under the influence he was what I would consider a model prisoner and quiet and caused no one any problems and got along real well with the other personnel within the jail and also among the officers, at least I feel he and I got along well and had no problems."

"This Court consistently has held that in the absence of an effort by the defendant to prove good character, evidence of the commission of other crimes is not admissible." 194 S.E.2d at 179. *See also, State v. McAboy,* ___ W. Va. ___, 236 S.E.2d 431 (1977).

And, as we reiterated in *State v. McArdle, supra,* it would be an unacceptable anomaly if the State, prohibited from showing prior convictions, could bring in a defendant's former jailers for identification purposes or such and thereby prove a criminal record.

*Reversed and remanded.*