No. 80-405

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

THE STATE OF MONTANA,

Plaintiff and Appellant,

vs.

ROBERT CHARLES JACKSON,

Defendant and Respondent.

---

Appeal from: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin.
Honorable Joseph B. Gary, Judge presiding.

Counsel of Record:

For Appellant:

Hon. Mike Greely, Attorney General, Helena, Montana
Dennis Dunphy argued, Assistant Attorney General,
Helena, Montana
Donald White, County Attorney, Bozeman, Montana
Michael J. Lilly argued, Deputy County Attorney,
Bozeman, Montana

For Respondent:

Goetz and Madden, Bozeman, Montana
James Goetz argued, Bozeman, Montana

---

Submitted: February 19, 1981

Decided: November 2, 1981

Filed: NOV 2 - 1981

*Thomas J. Kearney.*
Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

The State appeals from an order of the Gallatin County District Court which declared section 61-8-404, MCA unconstitutional and suppressed all evidence of the defendant's refusal to submit to a breathalyzer sobriety test after he was arrested for driving while under the influence of intoxicants. The primary question on appeal is whether the refusal is testimonial in nature so that the fact of refusal cannot be admitted into evidence. We hold that such refusal is testimonial in nature and that to admit evidence of the fact of refusal would violate the defendant's Fifth Amendment privilege as guaranteed by the United States Constitution, and would further violate defendant's privilege as guaranteed by Art. II, § 25 of the Montana Constitution.

A second question raised, but which we do not reach here because of our holding, is defendant's contention that admission of evidence of his refusal to take the breathalyzer test violates his right to due process because he was not told the consequences of his refusal. Without specifically setting forth the actual basis for its decision, the trial court granted the motion in limine, and thus suppressed all evidence of the defendant's refusal to take the breathalyzer test.

Shortly after the defendant's arrest on June 6, 1980, for driving while under the influence of alcohol, he was taken to the Bozeman police station and asked to submit to a breathalyzer test and to perform certain physical coordination exercises. He performed the coordination exercises, but refused to submit to the breathalyzer test. The police recorded all of his activities on videotape, including his refusal to take the breathalyzer test.

-2-

Before trial, the defendant filed a motion in limine to suppress all evidence of his refusal to submit to the breathalyzer test as well as any evidence of license suspension resulting from that refusal. Section 61-8-404(2), MCA, states that if one refuses to submit to a sobriety test, the fact of refusal can be admitted into evidence against him. However, section 61-8-402(3), MCA, permits a person to refuse a sobriety test. Defendant argued that admitting evidence of his refusal to take the sobriety test would violate his privilege against self-incrimination and his right to due process. The trial court agreed and granted the motion in limine.

Although the defendant concedes he has no federal constitutional right to refuse a sobriety test (see Schmerber v. California (1966), 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908), he contends that section 61-8-404(2), MCA, in one breath gives him a right to refuse the sobriety test, but in the next breath permits the fact of refusal to be admitted as evidence against him. This statutory right of refusal is testimonial or communicative in nature, he argues, and was compelled by the State. He further argues that evidence of his refusal violates his privilege against being compelled to testify against himself, and is equivalent to allowing prosecutorial comment on his right to remain silent.

The State argues, on the other hand, that the refusal is not testimonial or communicative in nature, and therefore it is not protected by the privilege against self-incrimination. The State cites a line of cases which holds that the refusal to take a sobriety test is conduct to be viewed as circumstantial evidence of guilt, in the same way that escape, flight, and false alibi are viewed. For example, see Commonwealth v.

Robinson (1974), 229 Pa. Super. 131, 324 A.2d 441 (refusal is circumstantial evidence from which the jury can infer his state of mind); People v. Sudduth (1966), 65 Cal.2d 543, 55 Cal.Rptr. 393, 421 P.2d 401, cert.denied (1967), 389 U.S. 850 (where refusal might operate to suppress rapidly-disappearing evidence of intoxication, it should not be encouraged as a device to escape prosecution and does not qualify for Fifth Amendment protection); State v. Durrant (1963), 55 Del. 510, 188 A.2d 526 (evidence of refusal reflects defendant's attitude toward the crime and is a matter of weight for the jury to decide). The fact is, however, that this line of cases fails to recognize that escape, flight, and false alibi are not compelled by the State. Under section 61-8-404(2), supra, the defendant is compelled to choose between providing physical evidence against himself by submitting to the sobriety test and providing testimonial evidence against himself by refusing to submit to the sobriety test. That is no choice at all.

The statute which recognizes the right to refuse the test, section 61-8-404, MCA, also provides for the admissibility of the fact of refusal:

> "(1) Upon the trial of any criminal action or proceeding arising out of acts alleged to have been committed by any person while driving or in actual physical control of a motor vehicle while under the influence of intoxicating liquor, evidence of the amount of alcohol in the person's blood at the time of the act alleged as shown by a chemical analysis of his blood, breath, or urine is admissible.
>
> "(2) If the person under arrest refused to submit to the test as hereinabove provided, proof of refusal shall be admissible in any criminal action or proceeding arising out of acts alleged to have been committed while the person was driving or in actual physical control of a motor vehicle upon the public highways while under the influence of intoxicating liquor."

-4-

Many states have held that admitting evidence of a defendant's refusal to take a sobriety test violates the privilege against self-incrimination because the effect of admitting evidence of the defendant's refusal is equivalent to compelling the defendant to testify against himself. See, for example, State v. Adams (W.Va 1978), 247 S.E.2d 475; Dudley v. State (Tex.Cr.App.Ct. 1977), 548 S.W.2d 706; People v. Rodriguez (1975), 80 Misc.2d 1060, 364 N.Y.S.2d 786; Application of Baggett (Okla. 1974), 531 P.2d 1011; State v. Andrews (1973), 297 Minn. 260, 212 N.W.2d 863, cert.denied (1974), 419 U.S. 881; Johnson v. State (1972), 125 Ga. 607, 188 S.E.2d 416; Gay v. City of Orlando (Fla. D.C.App. 1967), 202 So.2d 896, cert.denied (1968), 390 U.S. 956. We agree with these decisions that not only does admission of such evidence violate the defendant's privilege against self-incrimination, but also that the admission of such evidence is not always reliable and is highly prejudicial to the defendant, in effect forcing him to take the witness stand to explain why he refused to take the test, or to bear the consequences of not explaining.

Without question, the fact of refusal to take a sobriety test will be considered as circumstantial evidence of the defendant's belief that the test results would have been incriminating, and without question that is the argument any prosecutor would make to the jury. Effectively, the evidence of refusal has substantially the same effect in the prosecution's case as the evidence the prosecution sought to obtain through the resisted examination. Evidence of a defendant's refusal, whether expressed verbally or by physical resistance, is relevant in its testimonial aspect as the equivalent of the statement, "Because I fear that the test will produce evidence

-5-

of my guilt, I refuse to take the test." 78 Yale L. J.
1074, 1082-1085 (1969). And the likelihood is strong that
the jury will ascribe undue weight to the defendant's refusal.

We analogize this to a situation where the State
offers a defendant a polygraph examination, but the defendant
refuses it. Surely, the State would like to argue to the
jury that it had offered the defendant a polygraph examination,
but that he refused. And just as surely, we doubt that any
court would not find this to be an improper invasion into the
defendant's privilege against self-incrimination. In either
situation, the inference left for the jury is that the defendant
displayed consciousness of his guilt. Such evidence is
inadmissible if it is compelled by the State.

In addition, a defendant may have valid reasons for
refusing a breathalyzer test--reasons which do not reflect
his consciousness of guilt. Yet, if the fact of his refusal
is admitted into evidence, he will be compelled to either
take the witness stand to explain his refusal or to take the
chance that the jury will infer that he was in fact under
the influence of alcohol. Several cases illustrate situations
in which the defendant refused to submit to the test for
reasons other than fear that the test would yield evidence
of guilt: State ex rel. Baumert v. Municipal Court of
Phoenix (1978), 119 Ariz. 142, 579 P.2d 1112 (failure to
take test was due to defendant's asthma); State v. Adams
(W.Va. 1978), 247 S.E.2d 475 (defendant may fear the test
itself or may distrust the procedure or the competency of
the testers); State v. Paschal (1961), 253 N.C. 795, 117
S.E.2d 749 (defendant feared he would have to pay for the
test); Engler v. State (Okla. Crim. 1957), 316 P.2d 625 (bona
fide doubts as to reliability of test); and Columbus v. Mullins
(1954), 162 Ohio St. 419, 123 N.E.2d 422 (defendant desired

presence of a doctor.) In each of these cases, it was held that admitting evidence of defendant's refusal to take the test violated his privilege against self-incrimination.

The likelihood of prejudice to a defendant increases if he had an innocent reason for refusing the test, but, for other reasons, exercises his privilege not to take the witness stand and testify why he did not submit to the test. On one hand, the defendant would be entitled to an instruction that the jury is not to make inferences against the defendant because of his failure to take the witness stand. See, Griffin v. California (1965), 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, reh.denied (1965), 381 U.S. 957. On the other hand, the jury would be instructed that it could consider all circumstantial evidence including the defendant's failure to submit to the test, even though the defendant had the statutory right to refuse the test. The effect, however, of the statutory right to refuse the test is that it provides an unfair choice: the defendant may either voluntarily submit to the test or he may refuse, and, in the eyes of the jury, admit that he could not successfully pass the test. It is manifestly unfair to give an individual a right to refuse the test, and then to impose substantially the same penalty for refusing as that for submitting to the test.

The statutory right to refuse to take the test is perhaps a legislative expression that citizens should be protected from a distasteful struggle to forceably obtain physical evidence from their bodies. In Schmerber, supra, the United States Supreme Court held that the privilege against self-incrimination protects a defendant from being compelled to testify against himself, or to otherwise provide evidence of a testimonial or communicative nature. The Court ruled, however, only that the results of a blood test administered to a defendant despite his

-7-

objection were admissible because blood test results were real, physical evidence, rather than evidence of a testimonial nature.

The issue of whether a refusal to submit to a breathalyzer test could be admitted as evidence without violating a defendant's Fifth Amendment privilege was also raised in Schmerber, but the Court refused to rule on that issue because the defendant had not preserved that issue for appeal. Even so, the Court indicated in a now famous footnote that the issue would be controlled by general Fifth Amendment principles rather than on the narrow ground that prosecutorial comment on the defendant's refusal amounted to comment on his choice to exercise his Fifth Amendment privilege not to take the witness stand. Schmerber, supra.

The issue is also controlled by Art. II, § 25 of our own constitution, which provides that "No person shall be compelled to testify against himself in a criminal proceeding." The issue involves a communication that is testimonial in nature, and we must resolve the issue by applying Art. II, § 25. Clearly, to permit evidence of defendant's refusal to take the breathalyzer test would violate not only the United States Constitution, but also our own constitution.

In State v. Finley (1977), 173 Mont. 162, 566 P.2d 1119, we held that a defendant's privilege against self-incrimination was not violated by admitting into evidence a videotape recording of his post-arrest words and actions. We decided that the tape had not been introduced for the incriminating content of the words uttered by the defendant, but rather for the purpose of aiding the jury in understanding the testimony of the witnesses who had observed the defendant's unsteady walk and his slurred speech after his arrest. We

-8-

specifically noted that the videotape did not contain incriminating responses to interrogation by the police. But the same situation does not exist here. It is obvious that defendant's refusal is inherently self-incriminating because it carries a strong inference of guilt-the prosecutor would surely argue that defendant's refusal to take the test was prompted only by his knowledge that the test results would reveal his intoxication, and therefore incriminate him.

We hold under our own constitution, that if a communication of refusal, whether written, verbal, or otherwise, involves the defendant's consciousness of the facts and the operation of his mind in expressing it, the communication is testimonial in nature. A defendant's silence or negative reply to an officer's request which calls for an immediate reply is clearly an overt communication of the defendant's thoughts in response to the request. Doyle v. Ohio (1976), 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91. It is the act of refusal that is pertinent and suggestive of guilt, rather than the way in which it is communicated. Under our constitution, the privilege against self-incrimination forbids any compulsory communication of an accused person's thoughts, whether by acts  or words spoken, and the fact that it does not extend its protection to forbid the compulsory exhibition of physical characteristics does not nullify the protection it does provide.

In deciding this issue, we are mindful of a statement of the United States Supreme Court in Murphy v. Waterfront Commission of New York Harbor (1964), 378 U.S. 52, 55, 84 S.Ct. 1594, 1596-1597, 12 L.Ed.2d 678, 681, where the Court cogently spelled out that the nature of our criminal justice system reflects:

-9-

"[O]ur preference for an accusatorial rather than
an inquisitorial system of criminal justice; our
fear that self-incriminating statements will be
elicited by inhumane treatment and abuses; our sense
of fair play which dictates 'a fair state-individual
balance by requiring the government . . . in its contest
with the individual to shoulder the entire load,'
(citations omitted); our respect for the inviolability
of the human personality and of the right of each
individual 'to a private enclave where he may lead a
private life,' (citations omitted); . . . and our
realization that the privilege, while sometimes 'a shelter
to the guilty,' is often 'a protection to the innocent.'"

The United States Supreme Court has declared that the
privilege against self-incrimination must be liberally
construed in favor of the accused, Hoffman v. United States
(1951), 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118,
1124, and we must also liberally construe Art. II, § 25,
of our own constitution.

We affirm the decision of the trial court suppressing
evidence of defendant's refusal to take the breathalyzer
test, and at his trial, we direct that the prosecution shall
not directly or indirectly submit evidence to the jury that
the defendant was offered but refused to take a breathalyzer
test.

Affirmed and remanded for further proceedings.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

-10-

Mr. Chief Justice Frank I. Haswell dissenting:

I respectfully dissent. I would hold the refusal of the defendant to submit to a sobriety test admissible in evidence and remand the case to the District Court of Gallatin County for trial. In so doing I find no denial of the constitutional privilege against self-incrimination under either the state or federal constitutions.

Montana's implied consent law provides in relevant part:

"Chemical blood, breath, or urine tests.

"(1) Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent . . . to a chemical test of his blood, breath, or urine for the purpose of determining the alcoholic content of his blood if arrested by a peace officer for driving . . . a motor vehicle while under the influence of intoxicating liquor . . .

" . . .

"(3) If a person under arrest refuses upon the request of a peace officer to submit to a chemical test . . . none shall be given, but the division, upon the receipt of a sworn report of the peace officer that he had reasonable grounds to believe the arrested person had been driving . . . upon the public highways of this state while under the influence of intoxicating liquor and that the person had refused to submit to the test upon the request of the peace officer, shall suspend the license or driving privilege of such person . . . for a period of 60 days . . ." Section 61-8-402, MCA.

"Evidence admissible.

" . . .

"(2) If the person under arrest refused to submit to the test as hereinabove provided, proof of refusal shall be admissible in any criminal action or proceeding arising out of acts alleged to have been committed while the person was driving . . . a motor vehicle upon the public highways while under the influence of intoxicating liquor. . ." Section 61-8-404, MCA.

This law was enacted by the Montana legislature in 1971. The journal of the Senate Judiciary Committee indicates that at that time, Montana was one of only four states without this law.

The District Court held unconstitutional the provision that proof of refusal to submit to a sobriety test was admissible

in evidence "due to the split of authority of the various and respective states on the question of the constitutionality of this portion of the statute." In so holding, the District Court denied the statute the presumption of constitutionality to which the statute was entitled. McClanathan v. Smith (1980), _____ Mont._____, 606 P.2d 507, 37 St.Rep. 113.

Initially we must determine if evidence of refusal to submit to a chemical test for sobriety is relevant, i. e. whether it has sufficient probative value on the issue of intoxication to be admitted to evidence. In my view the better reasoned decisions hold that refusal to take a chemical test for intoxication may indicate the defendant's fear of the results of the test and his consciousness of guilt, and if the defendant has some other explanation for the refusal, such explanation can be considered by the jury in determining whether the refusal is to be construed as consciousness of guilt. For example, see Hill v. State (1979), _____Ala._____, 366 So.2d 318; Campbell v. Superior Court (1971), 106 Ariz. 542, 479 P.2d 685; People v. Conterno (1959), 170 C.A.2d 817, 339 P.2d 968; State v. Durrant (1963), 55 Del. 510, 188 A.2d 526; State v. Bock (1958), 80 Idaho 296, 328 P.2d 1065; State v. Benson (1941), 230 Iowa 1168, 300 N.W. 275; Gardner v. Commonwealth (1954), 195 Va. 945, 81 S.E.2d 614. It would appear to me that such evidence could support an inference of consciousness of guilt and that the jury is the proper body to determine what weight should be given such evidence.

There is yet another reason why this evidence is relevant. The State is entitled to show the jury why it produced no scientific evidence of intoxication to counteract the inference that the evidence of intoxication introduced by the State was weak. A common jury instruction given in Montana reads as follows:

> " You are instructed that evidence is to be
> considered not only by its own intrinsic weight,
> but also according to the evidence which it is
> in the power of one side to produce, and of the
> other to contradict; and therefore, that if
> weaker and less satisfactory evidence is

offered, when it appears that stronger and more satisfactory [evidence] was within the power of the party, the evidence offered should be viewed with distrust." MJIG No. 1.06.

In this sense evidence of refusal is relevant, material and probative on the weight of the evidence introduced by the State, entirely apart from its relevance concerning consciousness of guilt.

Most of the decisions denying materiality and probative value to a refusal to take a sobriety test are based on the reasoning that a refusal may be dependent upon reasons other than consciousness of guilt and therefore is not probative as to intoxication. One case has even held that evidence of refusal is inadmissible because such evidence simply is not probative. Duckworth v. State (Okla.Crim. 1957) 309 P.2d 1103. In my view evidence of refusal is probative and material for the reasons above stated and should be presented to the jury for their consideration rather than excluded from evidence by the judge as a matter of law. Evidence as to whether a person's refusal to take the sobriety test is due to his asthma, fear of the test itself, distrust of the procedure, distrust of the competency of the testers, fear that he would have to pay for the test, doubts as to the test's reliability, or a desire that his personal physician be present at the time the test is conducted is better weighed by the jury rather than being excluded by the judge as not relevant or probative.

The Fifth Amendment of the United States Constitution provides that "No person . . . shall be compelled in any criminal case to be a witness against himself . . ." U.S. Const. Amend. V. This provision is applicable in state court criminal proceedings through the due process clause of the Fourteenth Amendment of the United States Constitution. This constitutional privilege protects a defendant only from being compelled to testify against himself, or otherwise provide the state with evidence of a testimonial or communicative nature. Schmerber v. California (1966),

- 13 -

384 U.S. 757. The United States Supreme Court in Schmerber went on to say:

> "[B]oth federal and state courts have usually held that it offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture." Schmerber, 384 U.S. at 764.

The Montana Constitution provides: "No person shall be compelled to testify against himself in a criminal proceeding." 1972 Mont.Const., Art. II, §25. This Court has previously held that the Montana constitutional privilege against self-incrimination is no greater than that contained in the federal constitution.

> "[T]he Montana constitutional guarantee of the privilege against self-incrimination affords no broader protection to an accused than does the Fifth Amendment. State v. Armstrong, 170 Mont. 256, 552 P.2d 616. The opinions of the United States Supreme Court, therefore, delineate the maximum breadth of the privilege against self-incrimination in Montana." State v. Finley (1977), 173 Mont. 162, 164-165, 566 P.2d 1119, 1121.

The majority holding that a communication of refusal, whether written, verbal, or otherwise involving the defendant's consciousness of the facts and the operation of his mind in expressing it is testimonial in nature and violates his privilege against self-incrimination, extends far beyond any prounouncement of the United States Supreme Court to date. It extends the breadth of Montana's constitutional provision beyond that afforded by the United States Constitution and overrules sub silento this Court's own interpretation of Montana's constitutional privilege against self-incrimination.

At least two federal courts of appeal have held that allowing the admission into evidence of proof that defendant refused to take a breath test does not violate his privilege against self-incrimination. Welch v. District Court of Vermont Unit, Etc. (2d Cir. 1979), 594 F.2d 903; Newhouse v. Misterly

- 14 -

(9th Cir. 1969), 415 F.2d 514. The courts of at least 16 other states have likewise so held: Hill v. State (1979), \_\_\_\_Ala.\_\_\_\_, 366 So.2d 318; Campbell v. Superior Court (1971), 106 Ariz. 542, 479 P.2d 685; People v. Sudduth (1966), 55 Cal.Rptr. 393, 421 P.2d 401; State v. Durrant (1963), 55 Del. 510, 188 A.2d 526; State v. Holt (1968), 261 Iowa 1089, 156 N.W.2d 884; State v. Smith (1978), \_\_\_\_La.\_\_\_\_, 359 So.2d 157; People v. Taylor (1977), 73 Mich.App. 139, 250 N.W.2d 570; State v. Meints (1972), 189 Neb. 264, 202 N.W.2d 202; People v. Thomas (1978), 46 N.Y.2d 100, 385 N.E.2d 584; State v. Flannery (1976), 31 N.C.App. 617, 230 S.E.2d 603; City of Westerville v. Cunningham (1968), 15 Ohio St.2d 121, 239 N.E.2d 40; Commonwealth v. Robinson (1974), 229 Pa.Super. 131, 324 A.2d 441; State v. Smith (1956), 230 S.C. 164, 94 S.E.2d 886; Gardner v. Commonwealth (1954), 195 Va. 945, 81 S.E.2d 614; State v. Brean (1978), 136 Vt. 147, 385 A.2d 1085; State v. Albright (1980), 98 Wis.2d 663, 298 N.W.2d 196. At least five other states with statutes the same or similar to Montanas have been held constitutional, Robinson, Hill, Smith, Holt, and Thomas, supra.

Wigmore indicates that the privilege against self-incrimination does not prohibit inspection or proof of bodily features or conditions because such are nontestimonial in nature and list the following types or categories of this nonprohibited evidence:

1.  Fingerprinting, measuring and photographing a suspect,

2.  Imprinting a foot or shoe mark for identification;

3.  Examination of a suspect's body for identifying characteristics;

4.  Examination of a suspect's private parts for evidence of disease or crime;

5.  Extraction of a substance from a suspect's body such as urine, a blood sample, or breath;

6.  Requiring a suspect to put on a hat, glasses, shoes or

clothing for purposes of identification;

7. Requiring a suspect to speak for voice identification;

8. Requiring a suspect to write for identification;

9. Requiring a suspect to appear in court, stand, assume a stance, walk, or make a particular gesture;

10. Requiring a suspect to be examined for sanity.

Wigmore on Evidence, Vol. 8, section 2265, McNaughton Revision 1961.

A federal court of appeal has held that evidence of a defendant's refusal to cooperate in giving a handwriting exemplar,including his efforts to disguise his handwriting, was admissible as against the claim that the act of refusal was itself testimonial in nature. United States v. Wolfish (2d Cir. 1975), 525 F.2d 457, cert.denied (1976) 423 U.S. 1059. The analogy drawn by the majority with reference to polygraph tests is inapposite inasmuch as polygraph tests are not admissible in evidence and therefore the refusal to take the same would not be probative. The United States Supreme Court has held that there is no constitutional right to refuse to submit to a blood test, and the results of such test taken against an accused's will are admissible at trial, Schmerber, supra.

The majority of states considering the question have held that admission in evidence of refusal to submit to a chemical test for intoxication does not violate the privilege against self-incrimination; this result is reached on the ground that an accused has no constitutional or statutory right to refuse a chemical test, and since the results of a test taken against his will are admissible, evidence of refusal would also be admissible. See Hill v. State, supra. Conversely, most states that recognize a statutory right to refuse a chemical test do not allow evidence of such refusal as a general rule, e. g., State v. Parker (1976), 16 Wash.App. 632, 558 P.2d 1361; State v. Adams (1978), ____W.Va.____, 247 S.E.2d 475.

A refusal by itself is not a testimonial communication within the prohibition of the privilege against self-incrimination but rather it is the act of refusal, i.e., conduct, which gives rise to inferences that a jury is entitled to consider. The following language describes the reasoning behind this conclusion:

> "Nor was defendant's refusal to 'display his voice' itself a testimonial communication. It was circumstantial evidence of consciousness of guilt, and like similar evidence, such as escape from custody . . . false alibi . . . flight . . . suppression of evidence . . . and failure to respond to accusatory statements when not in police custody . . . its admission does not violate the privilege. Moreover, as in the foregoing examples, the evidence did not result from a situation contrived to produce conduct indicative of guilt. . . By acting like a guilty person, a man does not testify to his guilt but merely exposes himself to the drawing of inferences from circumstantial evidence of his state of mind." People v. Ellis (1966), 55 Cal.Rptr. 385, 421 P.2d 393, 397-398.

The majority proceed on what I consider a false premise-- that Montana's implied consent statute grants defendant a statutory right to refuse to take the sobriety test. The majority make no analysis of the statute or the rules of statutory construction.

In my view the plain and unambiguous language of the statute belies this construction. I find no language in the statute, express or implied, granting a person a statutory right of refusal. The language plainly says that a person operating a motor vehicle on the public highway gives his consent to a sobriety test if arrested for driving a vehicle while under the influence of intoxicating liquor; if he refuses, no test shall be given, but proof of such refusal is admissible in any criminal action arising out of his acts alleged to have been committed while driving under the influence. The majority fail to point out any language in the statute granting a statutory right of refusal. It has long been the law in Montana that the intention of the Legislature must first be determined from the plain meaning of the words used, and if interpretation of the statute can be so

determined the courts may not go further and apply any other means of interpretation. State, Etc. v. District Court, Etc. (1979), ___Mont.___, 591 P.2d 656, 36 St.Rep. 489; Dunphy v. Anaconda Company (1968), 151 Mont. 76, 438 P.2d 660, and cases cited therein. Where the language of a statute is plain, unambiguous, direct and certain, the statute speaks for itself and there is nothing left for the Court to construe. State, Etc. v. District Court, Etc., supra; Doull v. Wohlschlager (1963), 141 Mont. 354, 377 P.2d 758; Montana Chap., Nat. Elec. Con. Ass'n v. State Bd. of Ed. (1960), 137 Mont. 382, 352 P.2d 258. The function of the Court is simply to ascertain and declare what in terms or substance is contained in the statute and not to insert what has been omitted or omit what has been inserted. Section 1-2-101, MCA.

Montana'a implied consent law adopts a statutory scheme whereby a person using the public highway impliedly consents to a chemical testing of his blood, breath or urine when lawfully arrested for an offense involving the operation of a motor vehicle while under the influence of intoxicating liquor. The Act contains a statutory determination of intoxication according to the per cent by weight of alcohol found in a person's blood. The Act provides procedures for the suspension of a person's driver's license for 60 days in the event he refuses to submit to such test. The Act expressly provides for admission in evidence of refusal to submit to the test.

An act of this type was first enacted in New York in 1953 and arose out of dissatisfaction with alternative proposals protecting against intoxicated drivers by either making chemical tests compulsory or requiring actual consent in the form of a written waiver made at the time of application for a driver's license. The New York Act was not intended to provide a right to refuse a chemical test even though by the terms of the act the police must acquiesce in a refusal and may not compel a person to

- 18 -

submit to a test against his will.

This type of statute provides for mandatory consent with a freedom of refusal to prevent unseemly struggles that are likely to arise when police and citizens fail to appreciate the import of a common purpose. An act of this type does not contemplate a per se right of refusal, but rather an acquiescence in refusal in the posture of avoiding violent conflicts. The New York courts have interpreted the act in this matter:

> "[T]his 'right' of refusal is not really a right in
> the sense of a fundamental personal privilege,
> but, rather, was merely an accommodation to
> avoid a distasteful struggle to forcibly take
> blood." People v. Paddock (1971), 29 N.Y.2d
> 504, 272 N.E.2d 486.

Other courts have reached the same result in interpreting substantially similar acts. Campbell, supra; Bush v. Bright (1968), 264 Cal.App.2d 788, 71 Cal.Rptr. 123. Acts of this type do not grant a right of refusal since they exact a penalty for refusal in the form of suspension of the person's driver's license and in some states, including Montana, they extract the further penalty of expressly allowing evidence of refusal to be admitted at trial. Accordingly, I would not interpret Montana's implied consent law as providing a right of refusal.

The contention that a defendant may have valid reasons for refusing to take the test which have nothing to do with the consciousness of guilt loses much of its vitality because such reasons, if they exist in fact, can easily be proven by the testimony of third persons such as the police officers, doctors, technical experts on the reliability of such tests, and other competent witnesses without the necessity of the defendant taking

the stand himself if he chooses not to do so.

The construction of Montana's implied consent law to grant a driver the statutory right of refusal provides any defendant in such a case with an unconscionable advantage tantamount to acquittal. It enables a defendant to point out to the jury that

- 19 -

the State (which must prove his guilt beyond a reasonable doubt) has only the weakest of evidence as no scientific evidence of intoxication was produced; at the same time it denies the State the right to show that its failure to produce scientific evidence was due to the defendant's refusal to submit to a sobriety test. We have many times given lip service to the observation that the object of a criminal trial is to establish the truth, e.g., State v. Peters (1965), 146 Mont. 188, 405 P.2d 642. The majority today have made this impossible by placing a premium on non-disclosure of relevant facts to the jury.

For the foregoing reasons, I would hold the evidence of refusal to submit to a sobriety test admissible without violation of the defendant's privilege against self-incrimination under the federal or state constitutions.

_____
Chief Justice

We concur in the forgoing dissent of the Chief Justice.

_____
_____
Justices

- 20 -