STATE v. CLYDE DIAMOND PASCHAL.

(Filed 20 January, 1961.)

**1. Automobiles § 71: Criminal Law § 55—**
  Testimony to the effect that defendant, after having been taken into custody for driving a vehicle on a street while intoxicated, answered in the negative a question by the arresting officer as to whether he would like to take a blood test, *held* incompetent and its admission prejudicial, since defendant's negative answer did not amount to a refusal to submit to a blood test but, it not being shown that a blood test, if requested by defendant, would have been otherwise than at defendant's expense, amounted to no more than a statement by defendant that he did not choose to go to the expense of having a blood test made.

PARKER, J., dissents.

APPEAL by defendant from *Gambill, J.,* July 11, 1960, Criminal Term, of GUILFORD Superior Court, Greensboro Division.

Criminal prosecution on warrant charging that defendant, on April 11, 1959, "did unlawfully and willfully drive a vehicle upon the highway while under the influence of intoxicating liquors at the 1800 block of Merritt Drive, Greensboro, North Carolina," a violation of GS 20-138.

Upon trial *de novo* in superior court, on appeal by defendant from conviction and judgment in the Municipal-County Court of Greensboro, the jury found the defendant "Guilty as Charged," and judgment was pronounced as appears in the record. Defendant excepted and appealed.

*Attorney General Bruton and Assistant Attorney General Moody for the State.*

*E. L. Alston, Jr., for defendant, appellant.*

BOBBITT, J. Defendant does not challenge the sufficiency of the evidence to support the verdict, but assigns as prejudicial error the admission, over his objection, of the following testimony of a State's witness, the arresting officer, on direct examination, *viz.:* "I asked Mr. Paschal on the way to the Police Station if he knew about the blood test. And he stated that he did, and I asked him if he would like to take a blood test. He stated, 'no,' that he had taken one before and didn't want one." The solicitor then asked: "Did he take a blood test?" the witness answered: "No, sir, he did not."

Defendant did not testify, either on direct or cross-examination, as to what conversation, if any, he had with the arresting officer with reference to taking a blood test.

The State's evidence, which consisted solely of the testimony of the arresting officer, tended to show: The officer stopped defendant on account of the manner (described in detail) in which defendant was operating his car. Defendant, when he walked out in front of the patrol car, "weaved and wobbled." His speech was "slurred" and the odor of alcohol was upon his breath. In defendant's car, there was a six-pack carton of Budweiser Beer, containing four full bottles and one empty bottle, and also a partially filled bottle (containing thirteen ounces) of vodka. In the officer's opinion, defendant was highly intoxicated at the time of his arrest.

Defendant denied he was under the influence of intoxicating liquor when arrested. He told the arresting officer and testified at trial that the only alcoholic beverage he had drunk was "two beers." A witness for defendant testified that he, not the defendant, had taken the drink from defendant's pint bottle of vodka at a service station some two hours or more prior to defendant's arrest.

Uncontradicted evidence was to the effect that defendant was operating a motor vehicle upon a public street. The crucial question was whether defendant was doing so while under the influence of intoxicating liquor.

Assuming the blood specimen is obtained at or near the pertinent time and identified and traced until chemical analysis thereof is made, this Court has held: In a prosecution under GS 20-138, testimony of *a qualified expert* (1) as to the making and results of a chemical analysis of such blood specimen to determine the alcoholic content thereof, and (2) as to the effects of certain percentages of alcohol in the blood stream, is competent. *S. v. Moore,* 245 N.C. 158, 95 S.E. 2d 548; *S. v. Henderson,* 245 N.C. 165, 95 S.E. 2d 594; *S. v. Willard,* 241 N.C. 259, 84 S.E. 2d 899; *S. v. Collins,* 247 N.C. 244, 100 S.E. 2d 489. In each of these cases, the blood specimen was obtained for chemical analysis with the defendant's consent.

In *Osborne v. Ice Co.,* 249 N.C. 387, 106 S.E. 2d 573, a proceeding under the Workmen's Compensation Act, the employee was the driver of one of the cars involved in a collision and died on the way to the hospital. Shortly thereafter, the Coroner procured three ounces of blood from the employee's veins and chemical analysis thereof was made. The testimony of a qualified expert as to the making and results of such analysis and as to the effects of the disclosed percentage of alcohol in the employee's blood stream was held competent and sufficient to support the Industrial Commission's finding that the employee was intoxicated when the collision occurred.

In *S. v. Cash*, 219 N.C. 818, 15 S.E. 2d 277, the defendant in a prosecution for murder pleaded insanity at the time of the homicide due to the continued use of liquor, morphine and other opiates. While in jail, specimens of his blood and urine were taken for chemical analyses to determine the presence or absence of alcohol or morphine in his system. On appeal, defendant's contention that testimony as to the results of such analyses violated his constitutional right against compulsory self-incrimination, North Carolina Constitution, Article I, Section 11, was disposed of on the ground "the record fails to disclose any compulsion on the part of the officers in obtaining specimens of the defendant's blood and urine."

No test of defendant's blood was made. Hence, the competency of expert testimony as to the results of a chemical analysis of a blood specimen obtained without consent, by force or otherwise, is not presented. In this connection, see *Rochin v. California*, 342 U.S. 165, 96 L. Ed. 183, 72 S. Ct. 205, 25 A.L.R. 2d 1396; *Breithaupt v. Abram*, 352 U.S. 432, 1 L. Ed. 2d 448, 77 S. Ct. 408; Annotation, "Requiring submission to physical examination or test as violation of constitutional rights," 25 A.L.R. 2d 1407.

The established rule in this jurisdiction is that "(t)he scope of the privilege against self-incrimination, in history and in principle, includes only the process of testifying by word of mouth or in writing, *i.e.*, the process of disclosure by utterance. It has no application to such physical, evidential circumstances as may exist on the accused's body or about his person." *S. v. Rogers*, 233 N.C. 390, 399, 64 S.E. 2d 572, where *Ervin, J.*, reviews prior decisions of this Court. See also *S. v. Grayson*, 239 N.C. 453, 458, 80 S.E. 2d 387, opinion by *Parker, J.*, and cases cited.

Where this rule applies, it is held that the admission of evidence of a defendant's *refusal to submit* to a chemical test designed to measure the alcoholic content of his blood does not violate his constitutional right against self-incrimination. *State v. Bock* (Idaho 1958), 328 P. 2d 1065; *S. v. Smith* (S.C. 1956), 94 S.E. 2d 886; *Gardner v. Commonwealth* (Va. 1954), 81 S.E. 2d 614. In these cases, and others cited therein, testimony as to the defendant's *refusal to submit* to such test was held admissible.

In *State v. Bock, supra, Taylor, J.*, after referring to the cases where such evidence was held admissible, discusses the basis of decision in each of three cases where such evidence was held inadmissible, to wit, *People v. Stratton* (N.Y. 1955), 143 N.Y.S. 2d 362; *State v. Severson* (N.D. 1956), 75 N.W. 2d 316; *Duckworth v. State* (Okl. Cr. 1957), 309 P. 2d 1103. To this discussion, these additional matters are noted

with reference to *People v. Stratton, supra:* (1) The order (of the Supreme Court, Appellate Division) was affirmed by the Court of Appeals in a memorandum decision reported in 133 N.E. 2d 516. (2) As in *State v. Severson, supra,* a New York statute gave the defendant an absolute right to refuse the test.

Whether a defendant's *refusal to submit* to such blood test is competent as a circumstance for consideration by the jury along with all other evidence in passing upon defendant's guilt or innocence, need not be decided on this appeal.

No North Carolina statute relates to (1) the taking of such blood test, (2) the competency of evidence based on the results thereof, or (3) *the payment of the expense of a chemical analysis or of an expert* to testify as to the effects of the percentage of alcohol, if any, disclosed by such analysis. Here, defendant did not *refuse to submit* to a blood test. He simply answered, "No," when asked if he wanted one. Presumably, such blood test, if requested by defendant, would have been made at his expense. Indeed, the arresting officer testified on cross-examination: "I don't recall (defendant) asking me about the cost of a blood test or telling him the cost of it."

Since nothing appears to indicate that the blood test referred to by the officer, if requested, would be made otherwise than at defendant's expense, the only significance of his statement is that he did not choose to go to the expense of having such blood test made. Defendant's unwillingness to incur this expense was without probative significance in relation to his guilt or innocence. Even so, it seems apparent that the testimony as to the officer's inquiry and defendant's response was susceptible of use and probably was used to the defendant's prejudice.

Under the circumstances here presented, the admission of the challenged testimony was prejudicial error for which a new trial must be awarded.

New trial.

PARKER, J., dissents.