State v. Jones

---

STATE OF NORTH CAROLINA v. WESLEY IRVEN JONES, JR.

8225SC1124

(Filed 2 August 1983)

1. Searches and Seizures § 9— search of briefcase in bus following accident—denial of motion to suppress evidence of contents proper

In a prosecution for manslaughter, driving under the influence of intoxicating liquor, and other traffic violations, the trial court did not err in failing to suppress evidence of bottles containing alcohol which were found in a briefcase next to defendant bus driver's seat. Former G.S. 18A-21 which pertained to searches of vehicles used for illegal transportation of alcohol was inapplicable to the facts of the case, and since the purpose of the search of the briefcase was to determine the owner of the property so that the officer could safeguard its contents, the search was not unreasonable under the Fourth Amendment.

2. **Criminal Law § 95.2— testimony concerning speed limit signs—limiting instruction—no prejudicial error**

   In a prosecution for manslaughter, driving under the influence, and other traffic violations where defendant had been found not guilty of speeding in district court, the trial court did not err in denying defendant's motion to strike testimony concerning speed limit signs posted around the intersection of the accident. The witness made no reference as to whether defendant was speeding; he merely said that there were two speed limit signs on the road, and the trial court instructed the jury not to consider the testimony about the speed limit signs.

3. **Automobiles and Other Vehicles § 126; Constitutional Law § 33— driving under the influence—evidence of refusal to take breathalyzer test admissible**

   The admission into evidence of defendant's refusal to take a breathalyzer test does not violate his Fifth Amendment right against self-incrimination and is not unconstitutional under North Carolina law. G.S. 20-139.1(f).

4. **Criminal Law § 166— failure to present argument—failure to offer proof—assignments of error overruled**

   Two of defendant's assignments of error were overruled where defendant failed to make an offer of proof as to what excluded evidence would have been, and where defendant did not present an argument following his assignment of error as required by Rule 28(b)(5) of the Rules of Appellate Procedure.

5. **Automobiles and Other Vehicles § 126.3; Criminal Law § 86.1— testimony concerning blood test—impeachment of defendant**

   Defendant's argument that the evidence that a blood test was made was inadmissible because of the lapse of time between the accident and test was without merit in that the evidence that defendant knew the test was made was offered to contradict his earlier statement that he did not know whether he had had a blood test at the hospital.

6. **Criminal Law § 86.2— testimony of defendant's driving record properly admitted**

   In a prosecution for manslaughter, driving under the influence and other traffic related crimes, the trial court did not err in allowing testimony of defendant's driving record over the past 20 years. Once defendant chose to testify, cross-examination about prior convictions was admissible for impeachment purposes, and was relevant to show defendant's lack of credibility.

7. **Automobiles and Other Vehicles § 114— manslaughter—instructions proper**

   In a prosecution for manslaughter, driving under the influence and other related traffic offenses, the trial court clearly instructed the jury that if they found either that defendant failed to keep a proper lookout, failed to stop at the stop sign, or drove under the influence, then the next thing they would have to find beyond a reasonable doubt is that defendant's violation was culpable negligence. Defendant's contention that the judge instructed the jury that defendant would be guilty of manslaughter if he merely failed to keep a proper lookout was without merit.

State v. Jones

**8. Criminal Law § 100— private prosecutor**

Defendant was not denied an impartial prosecution when a private prosecutor appeared with the district attorney. Although the assistant district attorney did not question every witness, he conducted eight direct or cross-examinations and presented a closing argument, and there was no evidence that he did not remain in charge of the prosecution as required by G.S. 7A-61. Further, defendant failed to produce any evidence that he was denied the opportunity to plea bargain.

APPEAL by defendant from *Lupton, Judge.* Judgments entered 29 May 1982 in Superior Court, BURKE County. Heard in the Court of Appeals 13 April 1983.

Defendant, a Trailways bus driver, was charged with driving under the influence of intoxicating liquor in violation of G.S. 20-138; transporting an open container of liquor in violation of G.S. 18A-26 [repealed by Session Laws 1981, c. 412, s. 1, effective 1 January 1982, and replaced by G.S. 18B-401(a)]; failure to stop at a stop sign in violation of G.S. 20-158(b); and driving at a speed greater than reasonable and prudent under existing conditions in violation of G.S. 20-141(a). Defendant was also indicted for manslaughter. At trial for the misdemeanor offenses in District Court, defendant was found guilty of driving under the influence, failing to stop at a stop sign, and transporting an open container of liquor. Prior to trial in Superior Court, the prosecutor dismissed the charge of transporting an open container of liquor. The remaining charges were consolidated for trial.

At trial, defendant's attorney made the following statement:

If the Court please, on behalf of the defendant we would like to stipulate that on December 3, 1981, the occasion in question, that the defendant was driving a Trailways bus in a northly [sic] direction on Bethel Road, or Rural Paved 1704, and that at the intersection with the Drexel Road, Rural Paved 1712, which runs east and west, that the front of the bus struck the right side of the Chevrolet car within that intersection, and as the car was proceeding in an easterly direction, and that as the proximate result of that collision the infant Jodie Page Jordan was killed.

The State's evidence tended to show the following. Highway Patrolman Rector, who investigated the accident, said there was a stop sign on Bethel Road at the intersection with Drexel Road.

South of the stop sign was a "stop ahead" sign. There were also two speed limit signs south of the intersection. Rector said defendant told him the accident was his fault and he had run the stop sign. Rector took defendant aside, concluded that he smelled strongly of alcohol, read him his Miranda rights, informed him that he was under arrest for driving under the influence, and asked him to take a breathalyzer test. According to Rector, defendant's eyes were glassy and red, his face was red, and he appeared to be unsure of his steps.

At the Highway Patrol Station, Officer Dickey advised defendant of his rights pertaining to the breathalyzer test. Although defendant originally agreed to take the test, he changed his mind after he made a telephone call to the Trailways office. Rector was of the opinion that defendant had consumed sufficient alcohol to appreciably impair both his mental and physical faculties. Rector said defendant told him several times that he was afraid to take the breathalyzer test because he had several drinks that morning between 8:00 and 9:00 a.m.

Highway Patrolman Dickey testified that he observed defendant for about thirty minutes at the Highway Patrol Station. He said defendant had a strong odor of alcohol coming from his mouth, his face was flushed, his eyes were glassy, and, in his opinion, defendant had consumed enough alcohol to substantially impair his physical or mental faculties.

Highway Patrolman Jones testified that while at the scene of the accident assisting Trooper Rector, he smelled alcohol on defendant's breath. A man from the Trailways terminal told Jones not to let anyone take luggage from the bus without providing proper identification. After releasing a duffle bag to a passenger, Jones saw a brown briefcase by the driver's seat. It had no identification on the outside. He opened it and found three liquor bottles, a thermos, papers from Trailways bearing defendant's name, a ticket puncher, and charts. He said the bottles were two fifths and one pint. One of the fifths was half full, the other fifth and the pint were three-fourths full. After he found the bottles, he radioed Rector and told him what he had found. Later, when Jones gave defendant back his bag, minus the liquor, defendant said only one of the bottles belonged to him. He said he

had taken the other two from passengers to hold until they got off the bus.

Rector was recalled to the witness stand and testified that he put three vodka bottles in the evidence locker at the Highway Patrol Station, but one of the bottles was inadvertently destroyed when the locker was cleaned out.

Defendant's evidence tended to show the following. Ron Harris, an insurance adjuster, arrived at the scene of the accident at about 5:00 p.m. on 3 December 1981. He was accompanied by his associate, Russell Kerfoot. When they arrived at the scene, Trooper Jones told them what had happened. Kerfoot called Harris' attention to a vodka bottle on the steps of the bus. The bottle was in a bag. Harris took a picture of the bottle and the ticket. Kerfoot told Trooper Jones about the bottle.

Defendant testified that when he was at the Morganton bus station he saw two passengers drinking liquor. He confiscated their bottles and put them in his bag. The Morganton bus station was new, and defendant had to ask a taxi driver for directions to Interstate 40. He followed the directions, looking for a sign to Interstate 40. He said he saw neither the "stop ahead" sign nor the stop sign at the intersection of Bethel Road and Drexel Road. He did not see the Chevrolet until the collision. He said that at first he told Rector he would take the breathalyzer test. Defendant said his face was red because of his high blood pressure and because he was tense and nervous due to the accident. He had gout in his left foot which affected the way he walked. At the Highway Patrol Station, Trooper Dickey read defendant his rights. Rector asked defendant if he would make a statement. Defendant said he would first have to call Mr. Polk, the Trailways dispatcher. Defendant said Polk told him not to say anything or do anything. Defendant refused to make a statement or take the breathalyzer test. He denied drinking any liquor that day, but said the night before he drank about half a pint. His last drink was between 8:00 and 9:00 p.m. He went to the hospital with a Trailways supervisor, but he did not know if he had a blood test to determine his blood alcohol level. He admitted he was guilty of running the stop sign and killing the child. Defendant said he had driven over two million miles, and was convicted of fourteen traffic violations since 1956.

Stan Polk, the Trailways dispatcher, said he told defendant not to answer any questions or take any tests when defendant called him from the Highway Patrol Station.

Defendant's doctor testified that he treated defendant for tendonitis and gout. He said defendant's blood pressure was in the normal range but could have been elevated due to a stressful situation such as the accident. The sudden elevation in blood pressure could cause his complexion to first pale, and then redden.

Pamela Jo Williams, a passenger on the bus, sat directly behind defendant. She said he drove in a normal manner and did not smell of alcohol. She was looking for a sign to Interstate 40 and did not see the stop sign until they were almost at the intersection. She said that in her opinion defendant was not under the influence of alcohol.

On rebuttal, the State presented the following evidence. Donna Pearson, a registered nurse at Grace Hospital in Morganton, said she was on duty on 3 December 1981 when Mr. Williams, a Trailways transportation supervisor, in the presence of defendant, asked her to withdraw blood from defendant to test the blood alcohol level. Pearson said defendant agreed to have the blood alcohol drawn.

The jury found defendant guilty of failing to stop for a stop sign, driving under the influence, and involuntary manslaughter. He received a three-year sentence, the presumptive term, for the manslaughter conviction. As to the misdemeanors, he received a six-month sentence for driving under the influence, and sixty days for failing to stop for a stop sign, both of which were to run concurrently with the manslaughter sentence.

*Attorney General Edmisten, by Assistant Attorney General Jane P. Gray, for the State.*

*Myers, Ray and Myers, by Charles T. Myers and John F. Ray, for defendant appellant.*

VAUGHN, Chief Judge.

At the outset, we note that defendant's brief does not contain a non-argumentative summary of the material facts as required

by Rule 28(b)(3), Rules of Appellate Procedure. Failure to comply with this rule slows our work by requiring us to read through the entire lengthy transcript to determine the facts of the case. We have, however, elected to consider the case on its merits.

[1] Defendant's first assignment of error is that the trial court erred in denying his motion to suppress the evidence of the bottles found in his briefcase. Defendant bases his argument on appeal solely on the following sentence from G.S. 18A-21(c) [repealed by Session Laws 1981, c. 412, s. 1, effective 1 January 1982]:

> Provided, that nothing in this section shall be construed to authorize any officer to search any vehicle or other conveyance or baggage of any person without a search warrant duly issued, except where the officer sees or has absolute personal knowledge that there is intoxicating liquor . . . in the vehicle or baggage.

This sentence in G.S. 18A-21, however, pertains only to searches of vehicles used for illegal transportation of alcohol. Obviously, defendant's reliance on G.S. 18A-21 is mistaken because at trial, in Superior Court, he was charged with manslaughter, failure to stop at a stop sign, and driving under the influence, not illegal transportation of alcohol. Under these circumstances, G.S. 18A-21 is inapplicable.

Although defendant's present argument concerning his motion to suppress is based solely on G.S. 18A-21, at trial he argued that the search of his briefcase was unconstitutional. The trial court properly rejected this argument. Officer Jones testified that he had been told by a Trailways employee not to allow anyone to remove baggage without providing identification. After identifying and releasing one bag, Jones picked up an untagged and unmarked briefcase lying beside defendant's seat and opened it. In the briefcase he found three liquor bottles and defendant's identification. The State argues that the warrantless search was not unconstitutional because it qualified as an inventory search, permitted under *South Dakota v. Opperman*, 428 U.S. 364, 49 L.Ed. 2d 1000, 96 S.Ct. 3092 (1976). *Opperman*, however, does not support the State's argument. *Opperman* applies only to the situation where a vehicle is impounded by the police, and the police routinely inventory and secure the contents of the vehicle. This is done for the protection of the owner's property, to protect the

police from claims or disputes over stolen property, and to protect the police from danger. An inventory, pursuant to standard police procedures, is not unreasonable under the Fourth Amendment.

The situation in the instant case is different from *Opperman* because the vehicle was not impounded and its contents were not inventoried. It is, however, analogous to the situation in *State v. Francum*, 39 N.C. App. 429, 250 S.E. 2d 705 (1979). In *Francum*, defendant had wrecked his car, and after he was taken to the hospital, a State trooper noticed a paper bag lying beside the upturned car. The officer opened the bag and examined the contents, later determined to be hashish, barbiturates, and LSD. The Court held that although the officer's inspection of the bag's contents did not fall within the inventory search exception set forth in *Opperman*, the same considerations justifying an inventorying of property in an automobile that has properly been taken into police custody are applicable. The primary justification for the search is to safeguard the individual's property from loss or theft. The Court held that it was reasonable for the officer to look inside the paper bag to determine whether there was anything valuable belonging to the owner that should be held for safekeeping. The paper bag may have been worthless garbage which someone threw from a passing car, or it may have belonged to the owner of the wrecked car. It was impossible to tell from merely looking at the outside of the bag, so, under those circumstances the search was found to be reasonable. The search was not based upon probable cause, it was to identify the owner of the property so that it could be protected from theft. Had it been a briefcase or suitcase it would have been clear that it was valuable, had fallen out of the car, and belonged to the owner of the car, and a warrantless search would have been unjustifiable at that time. In the instant case, the wrecked vehicle was a bus with many passengers, not a private car. In *Francum*, the question the officer faced was whether the bag belonged to the owner of the car. In the instant case the question was which passenger owned the briefcase. Although defendant contends that the briefcase was beside his seat and obviously belonged to the driver, it is quite likely the officer reasoned that in the confusion of the accident a passenger's briefcase could have ended up beside the driver's seat. The purpose of the officer's search was analogous to the pur-

pose in *Francum*: to determine the owner of the property so the officer could safeguard its contents. Under these circumstances, the search was not unreasonable under the Fourth Amendment.

[2] Defendant's second assignment of error is that the trial court erred in allowing evidence of speed limit signs because defendant had been found not guilty of speeding in district court. We do not agree. When Trooper Rector was describing the intersection where the accident occurred, he said "There are two speed limit signs on this particular road. After you turn off on [Route] 18 there is the first sign which is approximately a hundred feet onto Bethel Road. After the first sign there is another thirty-five miles an hour speed sign, and it is approximately five tenths of a mile from N.C. 18." Defendant's subsequent motion to strike was overruled, but the court instructed the jury not to consider the testimony about the speed limit signs. Since the judge gave the jury a limiting instruction, defendant was not prejudiced by the denial of his motion to strike. In general, the jury is presumed to have heeded a limiting instruction, whether the instruction has removed the prejudice depends on the nature of the evidence and the circumstances of the case. *State v. Gregory,* 37 N.C. App. 693, 247 S.E. 2d 19 (1978). Here, Rector made no reference as to whether defendant was speeding; he merely said there were two speed limit signs on the road. There was no error prejudicial to defendant.

[3] Defendant's third assignment of error is that the trial court erred in admitting evidence of his refusal to take the breathalyzer test. Evidence of refusal to take the breathalyzer test is admissible as provided in G.S. 20-139.1(f):

> If a person under arrest refuses to submit to a chemical test or tests under the provisions of G.S. 20-16.2, evidence of refusal shall be admissible in any criminal action arising out of acts alleged to have been committed while the person was driving or operating a vehicle while under the influence of alcoholic beverages.

The admission into evidence of defendant's refusal to take a breathalyzer test does not violate his Fifth Amendment right against self-incrimination, *South Dakota v. Neville,* 459 U.S. ---, 74 L.Ed. 2d 748, 103 S.Ct. 916 (1983), and is not unconstitutional under North Carolina law. *State v. Paschal,* 253 N.C. 795, 117 S.E.

2d 749 (1961); *State v. Flannery*, 31 N.C. App. 617, 230 S.E. 2d 603 (1976). "The established rule in this jurisdiction is that '[t]he scope of the privilege against self-incrimination, in history and in principle, includes only the process of testifying by word of mouth or in writing, *i.e.*, the process of disclosure by utterance. It has no application to such physical, evidential circumstances as may exist on the accused's body or about his person.'" *State v. Paschal*, 253 N.C. at 797, 117 S.E. 2d at 750-751, *quoting State v. Rogers*, 233 N.C. 390, 399, 64 S.E. 2d 572, 578-579 (1951).

**[4]** Defendant's fourth assignment of error is that the trial court erred in refusing to permit Trooper Rector to testify as to whether defendant's walk could have been due to his bruised hip. This assignment of error is overruled because defendant failed to make an offer of proof as to what the excluded evidence would have been. *State v. Hedrick*, 289 N.C. 232, 221 S.E. 2d 350 (1976). Moreover, it is unlikely that Rector was more qualified than the jury to reach that conclusion.

Defendant's fifth assignment of error is that the trial court erred in failing to grant a motion for mistrial or to strike the testimony about the missing liquor bottle. This assignment of error is overruled because defendant did not present an argument following his assignment of error as required by Rule 28(b)(5), Rules of Appellate Procedure, instead he merely listed two pages of quotes from various cases. Moreover, the testimony that the Highway Patrol lost the bottle probably hurt the State more than defendant, since it may have undermined the credibility of the State's witnesses.

**[5]** Defendant's sixth assignment of error is that the trial court erred in allowing testimony about blood taken from defendant six to seven hours after the accident. The uncontradicted evidence was that the accident occurred at three o'clock, and defendant's blood sample was taken at about seven thirty, only four and a half hours later. The results of the test were not introduced into evidence. Nevertheless, defendant argues that the evidence that the test was made was inadmissible because of the lapse of time between the accident and the test. This argument is without merit. Perhaps the results of the test would have minimal probative value since the test was made several hours after the accident. However, the evidence that defendant knew the test was

made was offered to contradict his earlier statement that he did not know whether he had a blood test at the hospital. Such evidence was, therefore, admissible to impeach the defendant. *See* 1 Brandis on North Carolina Evidence § 47 (1982).

[6] Defendant's seventh assignment of error is that the trial court erred in allowing testimony of defendant's driving record over the past twenty years. When a defendant chooses to testify he may be cross-examined about any prior convictions, subject to the discretion of the trial judge. *State v. Atkinson*, 39 N.C. App. 575, 251 S.E. 2d 677 (1979). The trial judge did not abuse his discretion in allowing the cross-examination about defendant's driving record. The evidence of defendant's traffic violations tended to show that he pled guilty or was convicted of fourteen traffic offenses since 1956. Eleven of the violations occurred after defendant began working as a bus driver, although he testified that two or three were received when he was driving his personal car. This evidence, of course, is admissible for impeachment, and is relevant to show defendant's lack of credibility. *State v. Alford*, 289 N.C. 372, 222 S.E. 2d 222, *death penalty vacated*, 429 U.S. 809, 50 L.Ed. 2d 69, 97 S.Ct. 46 (1976); 1 Brandis on North Carolina Evidence § 112 (1982).

Defendant's eighth assignment of error is that the trial court erred in denying his motion to dismiss. A motion to dismiss requires the evidence to be considered in the light most favorable to the State, and, if there is substantial evidence, whether direct or circumstantial, to support a finding that the offense charged has been committed by defendant, the motion should be denied. *State v. McKinney*, 288 N.C. 113, 215 S.E. 2d 578 (1975). Defendant does not argue that the evidence did not support a finding that he was driving under the influence; instead, he contends that the State's evidence is not incompatible with his defense. The record is replete with evidence which, when viewed in the light most favorable to the State, supports the driving under the influence charge, and, as mentioned above, defendant admitted he ran the stop sign, and that the victim's death was proximately caused by the collision. Clearly the trial judge did not err in denying defendant's motion to dismiss.

[7] Defendant's ninth assignment of error is that the trial court erred in charging the jury on manslaughter. Although given an

opportunity to object out of the presence of the jury, defendant failed to object and cannot assign error to any portion of the jury charge. Rule 10(b)(2), Rules of Appellate Procedure. Moreover, defendant's argument, that the court instructed the jury that defendant could be found guilty of manslaughter if they found that he failed to keep a reasonable lookout, ignores the court's full set of instructions. The court clearly instructed the jury that if they found either that defendant failed to keep a proper lookout, failed to stop at the stop sign, or drove while under the influence, then the next thing they would have to find beyond a reasonable doubt is that defendant's violation was culpable negligence. The trial judge twice instructed the jury as follows:

> Now, members of the jury, this next thing that you must find is that the defendant's violation, if you find that he did violate one or more of those 3 motor vehicle laws, that is, the rule that he is required to keep a reasonable lookout and the rule that he is required to stop for the stop sign and the rule and law that he shall not drive on the highway while under the influence of intoxicating liquor, if you should find that he did violate one of those laws or more, your next thing to determine and the next thing which you must find beyond a reasonable doubt is that the violation by the defendant constituted culpable negligence.

> As I told you before, you must find more than just a violation to constitute culpable negligence; and in determining whether a violation of a motor vehicle law constitutes culpable negligence the violation must be considered by you along with all the facts and circumstances existing at that time relating to such violation.

> Now, a violation of a safety — a motor vehicle safety law — and I want you to carefully listen to what I have to say — a violation of a motor vehicle safety law which results in injury or death will constitute culpable negligence if the violation is wilful, wanton or intentional; but where there is an unintentional or inadvertent violation of the motor vehicle law such violation, standing alone, does not constitute culpable negligence. I have told you that several times.

> The inadvertent or unintentional violation of the statute must be accompanied by recklessness of probable conse-

quences of a dangerous nature when tested by the rule of reasonable foresight amounting altogether to a thoughtless disregard of consequences or a heedless indifference to the safety of others in order to constitute culpable negligence.

Defendant's contention that the judge instructed the jury that defendant would be guilty of manslaughter if he merely failed to keep a proper lookout is without merit.

[8] Defendant's tenth assignment of error is that the trial court erred in denying his motion for appropriate relief because he was denied an impartial prosecution and an unfettered right to plea bargain. He first contends that the private prosecutors exercised complete control over the case. The record, however, does not support this contention. It has long been the rule that the trial judge has discretion to permit private prosecutors to appear with the District Attorney. *State v. Best,* 280 N.C. 413, 186 S.E. 2d 1 (1972). Although the Assistant District Attorney did not question every witness, he conducted eight direct or cross-examinations and presented a closing argument. There is no evidence that he did not remain in charge of the prosecution as required by G.S. 7A-61. In *State v. Page,* 22 N.C. App. 435, 206 S.E. 2d 771, *cert. denied,* 285 N.C. 763, 209 S.E. 2d 287 (1974), the private prosecutor conducted every examination of the State's witnesses, every cross-examination of defendant's witnesses, and made the only closing argument. The Court found no error, holding that absent a showing to the contrary the Court must assume that the solicitor (*i.e.,* the District Attorney) remained in charge throughout the trial. *See also State v. Chapman,* 294 N.C. 407, 241 S.E. 2d 667 (1978) (the record disclosed no participation by the solicitor in the trial, although he participated in the sentencing hearing; the Court found no error).

As for defendant's contention that he was denied an opportunity to plea bargain, the only evidence in the record on this point is a letter from Mr. Byrd, one of the private prosecutors, to defendant's counsel in which he said he could not accept the plea bargain but he would discuss the matter with the Assistant District Attorney. This letter does not tend to show that defendant was denied an opportunity to plea bargain, it merely shows that the private prosecutor could not accept the plea. There is no evidence of any direct communication between defendant and the

Assistant District Attorney nor any evidence that such communication was frustrated by the private prosecutors. Defendant has simply failed to produce any evidence that he was denied the opportunity to plea bargain.

We have carefully reviewed defendant's assignments of error and find

No error.

Judges HEDRICK and ARNOLD concur.