SANDY CITY, Plaintiff and
Respondent,

v.

Lloyd E. LARSON, Defendant
and Appellant.

No. 19754.

Supreme Court of Utah.

Feb. 4, 1987.

Phil L. Hansen, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Bruce M. Hale, Asst. Atty. Gen., Salt Lake City, B. Kent Morgan, Sandy City Atty., Sandy, for plaintiff and respondent.

HALL, Chief Justice:

The dispositive issue presented by this appeal is whether the admission into evidence of defendant's refusal to submit to a breathalyzer test offends the right against self-incrimination guaranteed by article I, section 12 of the Utah Constitution. We conclude that it does not.

At approximately 12:15 a.m. on November 13, 1982, Officer Hal Cutler, a Sandy City police officer, responded to an anonymous tip concerning a suspected drunk driver. After spotting a vehicle matching the description given by the informant, the officer followed the vehicle for several blocks. During this time, he observed the vehicle moving back and forth in its own lane in a jerky fashion. The vehicle also crossed the lane lines four times. The officer, suspecting a drunk driver, turned on the police vehicle's red lights. When defendant's vehicle failed to stop, the officer turned on the siren. Defendant then pulled over.

Officer Cutler approached the vehicle on the driver's side. Another officer, Officer Woodard, approached the passenger side. Officer Cutler asked defendant for his driver's license and registration. Defendant said that he did not have a driver's license with him and could not locate the registration. Officer Cutler, smelling the odor of alcohol on defendant's breath, asked him to step out of the vehicle. Cutler then asked defendant how much he had had to drink, and defendant replied that he had consumed "seven or eight." Defendant also said that "he knew he had too much to drink, but he only had one more block to go." Cutler then asked defendant to perform field sobriety tests. While both officers observed, defendant attempted four tests, three of which he performed unsatisfactorily. Officer Cutler then decided that defendant was under the influence of alcohol and arrested him. Officer Cutler told

defendant to turn around and empty his pockets, at which point defendant fled on foot. Defendant was pursued, caught, handcuffed, and placed in Cutler's police car. Cutler did not give defendant a *Miranda* warning at any time.

Following the arrest, Cutler asked defendant to take a breath test to determine the amount of alcohol in his blood. Defendant refused. Cutler explained to defendant that if he refused to take the test, his license could be revoked for a year.[1] Defendant replied that "he didn't care if he did lose his license." Cutler asked defendant several more times to take the test. Defendant refused each time. Cutler then transported defendant to jail. At no time did Cutler inform defendant that his refusal to take the test could be admitted into evidence during any civil or criminal action or proceeding arising out of the incident.

After a jury trial in the Fifth Circuit Court, defendant was convicted of driving under the influence, driving with a suspended license, and interference with an arrest by a law enforcement officer. The Third District Court upheld the jury verdict.

U.C.A., 1953, § 41–6–44.10(h) (Repl. Vol. 5A, 1981 ed.) (amended 1983) provided:

If a person under arrest refuses to submit to a chemical test or tests ... *evidence of refusal shall be admissible in any civil or criminal action or proceeding* arising out of acts alleged to have been committed while the person was driving or in actual physical control of a motor vehicle while under the influence of alcohol or any drug....

(Emphasis added.) In the instant case, defendant refused several times to take a breathalyzer test after having been arrested for D.U.I. After the police officer advised defendant that he could lose his license if he refused to take the test, defendant responded that "he didn't care if he did lose his license." Defendant contends that the refusal and accompanying statement were impermissibly introduced into evidence in order to infer that defendant refused the test because he felt that he would fail it.

Article I, section 12 of the Utah Constitution provides that an "accused shall not be compelled to give evidence against himself." The federal counterpart of this section is found in the fifth amendment to the Constitution of the United States. It provides that no person shall be compelled "to be a witness against himself." In *American Fork City v. Crosgrove*,[2] this Court defined the scope of article I, section 12 as being no broader than its federal counterpart and concluded that "the framers intended the privilege to have the same scope that it had under similar constitutional provisions, which was the scope it had at common law."[3] Thus, although we decide this case under the Constitution of Utah, cases decided by the United States Supreme Court and others offer guidance.

In *Schmerber v. California*,[4] the United States Supreme Court held that a state could force a defendant to submit to a blood alcohol test without violating the defendant's fifth amendment right against self-incrimination.[5] Similarly, in *Cavaness v. Cox*[6] and in *Holman v. Cox*,[7] this Court held that a defendant has no constitutional right to refuse to submit to a blood alcohol test. The issue presented by this appeal was left open in *Schmerber, Cavaness,* and *Holman.* However, in *South Dakota*

---

1. *See* U.C.A., 1953, § 41–6–44.10 (Repl.Vol. 5A, 1981 ed.) (amended 1983). This Court previously affirmed an order of the Third District Court revoking defendant's driver's license. *See Larson v. Schwendiman*, 712 P.2d 244 (Utah 1985).

2. 701 P.2d 1069 (Utah 1985).

3. *Id.* at 1073. In so holding, the Court overruled *Hansen v. Owens*, 619 P.2d 315 (Utah 1980), which had held the scope of article I, section 12 to have a broader dimension than its federal counterpart. *Id.* at 1071–72.

4. 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

5. *Id.* at 761, 86 S.Ct. at 1830–1831.

6. 598 P.2d 349 (Utah 1979).

7. 598 P.2d 1331 (Utah 1979).

*v. Neville,*[8] the United States Supreme Court addressed the issue and held that admission into evidence of a defendant's refusal to submit to a blood alcohol test does not offend the fifth amendment right against self-incrimination.[9]

The facts in *Neville* do not differ significantly from those in the instant case. The defendant was arrested, and he refused to submit to a blood alcohol test although he was warned that he could lose his driver's license if he so refused. South Dakota law provided that evidence of refusal to submit to a blood alcohol test was admissible at trial. Nevertheless, the defendant was successful at trial in having evidence of his refusal suppressed. On appeal, the South Dakota Supreme Court affirmed on the grounds that introducing evidence of the defendant's refusal would violate both the federal and state constitutional privileges against self-incrimination. The United States Supreme Court reversed and remanded. The conclusions reached by that Court are helpful in our analysis of this case.

In *Neville,* the Court reiterated its holding in *Schmerber* that a person suspected of driving under the influence has no constitutional right to refuse to submit to a blood alcohol test which consists of physical evidence, as distinguished from testimonial evidence.[10] The Court also reiterated that it had repeatedly held that the fifth amendment is limited to prohibiting the use of physical or moral compulsion to exact testimony from a witness asserting the privilege[11] and that this coercion requirement came from the constitutional language directing that no person "shall be *compelled* in any criminal case to be a witness against himself."[12] Inasmuch as defendant Neville was given a choice of submitting to the test or refusing the same, the Court concluded that the values behind the fifth amendment were not hindered.[13] Specifically, the Court held that "a refusal to take a blood-alcohol test, after a public officer has lawfully requested it, is not an act coerced by the officer, and thus is not protected by the privilege against self-incrimination."[14] Moreover, the Court reasoned that the suspect could be legitimately compelled to submit to the test against his will; that it was no less legitimate to offer the option to refuse the test, with the attendant penalties for the choice; and that the option to refuse the test was a true choice and not one designed to subtly coerce the taking of a test the State has no right to compel.[15] Finally, the Court noted that "[i]n the context of an arrest for driving while intoxicated, a police inquiry of whether the suspect will take a blood-alcohol test is not an interrogation within the meaning of *Miranda.*"[16]

Although decisions of the United States Supreme Court and other courts are not binding upon us in interpreting our state constitution, the reasoning in *Neville* is persuasive, and in this instance we do not interpret our state constitution differently.

■ In this case, there was no compulsion by the State aimed at coercing defendant to refuse to take the test. In fact, under the statutory scheme set forth in the implied consent statute, any compulsion exercised on a defendant is to compel that defendant to *take* the test.[17] The implied

8. 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983).

9. *Id.* at 564, 103 S.Ct. at 922–923.

10. *Id.* at 559, 103 S.Ct. at 920.

11. *Id.* at 562, 103 S.Ct. at 922 (citing *Fisher v. United States,* 425 U.S. 391, 397, 96 S.Ct. 1569, 1574, 48 L.Ed.2d 39 (1976)).

12. *Id.* at 562, 103 S.Ct. at 922 (emphasis in original) (citing U.S. Const. amend. V).

13. *Id.* at 563, 103 S.Ct. at 922.

14. 459 U.S. at 564, 103 S.Ct. at 923 (footnote omitted).

15. *See* 459 U.S. at 563, 103 S.Ct. at 922.

16. *Id.* at 564 n. 15, 103 S.Ct. at 923 n. 15 (citing *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)).

17. *See, e.g., Neville,* 459 U.S. at 564, 103 S.Ct. at 923.

consent statute requires a defendant to provide evidence in the form of a breath sample.[18] However, the statute also affords the arrested driver the choice of refusing to take the test, but has expressly qualified that choice.[19] A refusal has two penalties: (1) driver's license revocation for a period of one year, and (2) use of the refusal against the defendant in any action arising out of the incident, including a criminal prosecution for driving while intoxicated.[20] Thus, all legal compulsion is on the driver to take the breathalyzer test and to provide the noncommunicative evidence. Since a defendant is not compelled to refuse the test, it need not be decided whether such a refusal is physical evidence or evidence of a testimonial and communicative nature.

■ The Court in *Neville* also held that admitting evidence of the refusal to take the blood alcohol test did not violate due process despite the fact that the suspect was not fully warned that such refusal was admissible at trial.[21] The Court reasoned that the right to remain silent underlying the *Miranda* warnings is one of constitutional dimension and therefore cannot be unduly burdened, while the right to refuse the blood alcohol test is, by contrast, simply a matter of grace afforded by statute.[22]

The Supreme Court of Kansas reached the same conclusion,[23] stating:

The taking or the refusal to take the test is an option provided by the legislature. Both the results of the test, if taken, or the refusal to take it, if declined, are admissible in evidence, and the admission of such evidence does not offend the Fifth Amendment privilege against self-incrimination or the right to due process.

... Since the refusal is not the exercise of a constitutional right, but merely a matter of grace bestowed by the legislature, we hold that there is no requirement that an explanation of the accused's right to refuse the test or of the consequences of that refusal be given. The officer administering the test may not mislead the accused, but he or she need not explain the possible consequences of a refusal to take the test.[24]

We therefore hold that a refusal to take a breathalyzer test is not an act compelled by the State and is thus not protected by the article I, section 12 privilege against self-incrimination. Further, evidence of

**18.** A breath sample is noncommunicative in itself. Clearly, under our holding in *Crosgrove*, 701 P.2d at 1075, there is no self-incrimination violation if the defendant does provide such evidence even though his actions in doing so are compelled.

**19.** Like Utah, many states have statutes that provide for the admissibility into evidence of a defendant's refusal to take a blood alcohol test. Courts considering these statutes have found no violation of the privilege against self-incrimination under either the fifth amendment to the United States Constitution or the relevant state constitution. *See, e.g., State v. Compton*, 233 Kan. 690, 664 P.2d 1370 (1983) (Kan.Stat.Ann. § 8–1001(c) (1982) (amended 1985 & 1986)); *State v. Jackson*, 672 P.2d 255 (Mont.1983) (Mont.Code Ann. § 61–8–404 (amended 1985)); *People v. Thomas*, 46 N.Y.2d 100, 412 N.Y.S.2d 845, 385 N.E.2d 584, (1978) (N.Y.Veh. & Traf.Law § 1194(4) (amended 1985)); *State v. Brean*, 136 Vt. 147, 385 A.2d 1085 (1978) (Vt. Stat.Ann. tit. 23, § 1205(a) (1978) (amended 1981 & 1983)); *City of Laramie v. Mengel*, 671 P.2d 340 (Wyo.1983) (Wyo.Stat. § 31–6–105(f) (1977) (amended 1985)).

**20.** U.C.A., 1953, § 41–6–44.10(b), (h) (Repl.Vol. 5A, 1981 ed.) (amended 1983).

**21.** 459 U.S. at 565–66, 103 S.Ct. at 923–24. The Court concluded that unlike the situation in *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), it was not fundamentally unfair to use the refusal to take the test as evidence of guilt even though the defendant "was not specifically warned that his refusal could be used against him at trial."

**22.** 459 U.S. at 565, 103 S.Ct. at 923. On remand, the Supreme Court of South Dakota interpreted the South Dakota Constitution to the contrary, *State v. Neville*, 346 N.W.2d 425 (S.D.1984), but has since partially overruled that decision, concluding that a refusal to perform a blood alcohol test does not constitute communicative or testimonial evidence. *See State v. Hoenscheid*, 374 N.W.2d 128 (S.D.1985).

**23.** *State v. Compton*, 233 Kan. 690, 664 P.2d 1370 (1983).

**24.** *Id.* at 694–95, 664 P.2d at 1375.

the refusal to take the test is admissible in evidence and does not offend the article I, section 12 privilege against self-incrimination or the right to due process.

We have reviewed defendant's other issues on appeal and find them to be wholly without merit.

The conviction and judgment are affirmed.

STEWART and HOWE, JJ., concur.

DURHAM, Justice (concurring and dissenting):

While I concur with some specific conclusions in the majority opinion, I disagree with other critical parts of its analysis, as explained below, and would reverse.

The majority correctly poses the issue as whether the admission into evidence of defendant's refusal to take a breathalyzer test, when that refusal was communicated without benefit of a *Miranda* warning, violated defendant's privilege not to give evidence against himself under article I, section 12 of the Utah Constitution. However, in view of the fact that this case is decided solely upon state constitutional grounds, I believe the *Miranda* rule is irrelevant. This Court has never considered or ruled on the question of whether *Miranda* warnings are required under the Utah Constitution.[1] More importantly, I would hold that the choice imposed upon defendant here compelled him to provide evidence of a testimonial or communicative nature, with the explicit purpose of using that testimony or communication to obtain his conviction of a criminal offense. Therefore, I find unconstitutional that part of the statute which, by providing that evidence of the refusal shall be admissible in any criminal action against the accused, compels a waiver of the right to remain silent. U.C.A., 1953, § 41-6-44.10(8) (Supp.1986).

Article I, section 12 of the Utah Constitution says: "The accused shall not be compelled to give evidence against himself." That language guarantees that a person accused of a crime may not be forced against his will to give evidence of a testimonial or communicative nature that will help the state convict him. We have previously held that, because providing a breath sample for a breathalyzer test is not evidence of a testimonial or communicative nature, there is no constitutional violation when the state imposes civil penalties for the refusal to give a sample. *American Fork City v. Crosgrove*, 701 P.2d 1069 (Utah 1985). We now deal with another aspect of the dilemma imposed by the state on the person suspected of drunk driving: whether evidence of a refusal may constitutionally be used against a defendant in a criminal proceeding.

Our statute presently gives a person suspected of driving under the influence two options: he may submit to a breathalyzer examination whose results may be used to incriminate him at trial, or he may refuse to take the test. If he refuses to take the test, he loses his driver's license for one year, and his refusal may be used as evidence against him at trial. The first sanction is proper and constitutionally permissible; the second is not.

This scheme violates the right to remain silent guaranteed by the Utah Constitution because the statute makes it impossible to exercise the right to remain silent without incurring substantial detriment in criminal proceedings. A suspect is forced to either give the state incriminating physical evidence or waive a fundamental constitutional right. The majority, relying on the analysis in *South Dakota v. Neville*, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983), concludes that the statute does not force a suspect to refuse a breath test, and is thus not compulsory. That conclusion ignores the fact that the statute has the effect of coercing the *waiver* of the right to remain silent by posing submission to a breath test as the only alternative. There is no constitutional option for the suspect under these circumstances; literal silence is construed as a refusal. *See Beck v. Cox,*

---

1. The applicability of the *Miranda* rule was assumed without a holding in *Salt Lake City v.* Carner, 664 P.2d 1168 (Utah 1983) because the issue was not raised or briefed by the parties.

597 P.2d 1335, 1337 (Utah 1979). Therefore, a suspect *must* either take the test and provide the state with physical evidence it would not otherwise have, or waive his right under the Utah Constitution not to give evidence against himself. I am unable to see how such a choice does not impermissibly burden · the constitutional privilege against self-incrimination. The fact that the defendant has no constitutional right to refuse to take the test is irrelevant to the analysis. What he has is a right not to be forced to give that refusal to the state as "evidence against him." Yet our statute penalizes reliance on the right to be silent by forcing defendant to give physical evidence against himself if he exercises it. In other words, the state compels a suspect to do one or the other: provide incriminating physical evidence or waive the constitutional protection against giving testimonial or communicative evidence.[2]

I believe the Montana Supreme Court applied the correct analysis in its first *State v. Jackson* opinion, 637 P.2d 1, 3–4 (Mont.1981):

> We analogize this to a situation where the State offers a defendant a polygraph examination, but the defendant refuses it. Surely, the State would like to argue to the jury that it had offered the defendant a polygraph examination, but that he refused. And just as surely, we doubt that any court would not find this to be an improper invasion into the defendant's

privilege against self-incrimination. In either situation, the inference left for the jury is that the defendant displayed consciousness of his guilt. Such evidence is inadmissible if it is compelled by the State.

In addition, a defendant may have valid reasons for refusing a breathalyzer test—reasons which do not reflect his consciousness of guilt. Yet, if the fact of his refusal is admitted into evidence, he will be compelled to either take the witness stand to explain his refusal or to take the chance that the jury will infer that he was in fact under the influence of alcohol. Several cases illustrate situations in which the defendant refused to submit to the test for reasons other than fear that the test would yield evidence of guilt: *State ex rel. Baumert v. Municipal Court of Phoenix* (1978), 119 Ariz. 142, 579 P.2d 1112 (failure to take test was due to defendant's asthma); *State v. Adams* (W.Va.1978) [162 W.Va. 150], 247 S.E.2d 475 (defendant may fear the test itself or may distrust the procedure or the competency of the testers); *State v. Paschal* (1961), 253 N.C. 795, 117 S.E.2d 749 (defendant feared he would have to pay for the test); *Engler v. State* (Okl. Crim.1957), 316 P.2d 625 (bona fide doubts as to reliability of test); and *Columbus v. Mullins* (1954), 162 Ohio St. 419, 123 N.E.2d 422 (defendant desired presence of a doctor.) In each of these cases, it was held that admitting evi-

---

**2.** I would also stress that this opinion in no way undermines efforts by the state to eliminate drunk driving. In his dissent in *State v. Jackson,* 672 P.2d 255 (Mont.1983), Judge Shea made the following well-reasoned comments:

> Before launching into the body of my dissent, I detour here to comment on the current trends to crack down on drunk driving. Those trends are laudable and every effort to do so is a step in the right direction—provided that no constitutional rights are violated in the process. In *South Dakota v. Neville* (1983), [459] U.S. [553], 103 S.Ct. 916, 74 L.Ed.2d 748, the United States Supreme Court referred to the carnage of our highways as a result of drunk driving. No one can deny the tragic statistics relating to drinking and driving. However, the criminal law does not have to be enforced in such a manner as to

cause a head-on confrontation with either the Fifth Amendment or Art. II, § 25 of our own constitution. Driving is a privilege, and that privilege can be revoked. I see nothing unconstitutional in a law providing that if a driver (on reasonable probable cause) is asked by a law officer to give a blood alcohol sample or a breath sample and refuses to do so, his license can be suspended. The refusal can be the triggering event for suspension. However, if the State chose, it could still proceed against the defendant on a charge of driving while intoxicated. In the criminal proceeding, however, the State should *not* be able to use the defendant's refusal against him as a tacit admission that his refusal was based on his belief that he could not pass the test. *Id.* at 262.

dence of defendant's refusal to take the test violated his privilege against self-incrimination.

The likelihood of prejudice to a defendant increases if he had an innocent reason for refusing the test, but, for other reasons, exercises his privilege not to take the witness stand and testify why he did not submit to the test. On one hand, the defendant would be entitled to an instruction that the jury is not to make inferences against the defendant because of his failure to take the witness stand. See, *Griffin v. California* (1965), 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, reh. denied (1965), 381 U.S. 957, 85 S.Ct. 1797, 14 L.Ed.2d 730. On the other hand, the jury would be instructed that it could consider all circumstantial evidence including the defendant's failure to submit to the test, even though the defendant had the statutory right to refuse the test. The effect, however, of the statutory right to refuse the test is that it provides an unfair choice: the defendant may either voluntarily submit to the test or he may refuse, and, in the eyes of the jury, admit that he could not successfully pass the test. It is manifestly unfair to give an individual a right to refuse the test, and then to impose substantially the same penalty for refusing as that for submitting to the test.

The majority opinion fails to focus on this constitutional infirmity and simply adopts the analysis used by the United States Supreme Court in *South Dakota v. Neville*, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983), in which the same issue was decided under the fifth amendment to the federal constitution. That decision is not controlling for this Court when construing the import of our state constitutional provisions, and it should not be followed here.[3] Therefore, I agree with the dissenting opinion of Justice Shea of the Montana Supreme Court, who criticized the majority

opinion in *State v. Jackson*, 672 P.2d 255 (Mont.1983), for enshrining the principle that "the Montana constitutional provision against self-incrimination would march lock-step with interpretation given to the fifth amendment clause of the United States Constitution." *Id.* at 263. He described the majority opinion as "delegat[ing] to the United States Supreme Court our duty to interpret our constitution. This constitutes an abdication of our duty to interpret our own constitution." *Id.* at 262.

Finally, there is a significant issue not treated by the majority opinion or by the parties in their briefs in this case: the question of whether and to what extent an exclusionary rule is applicable under article I, section 12 of the Utah Constitution. The majority opinion appears to assume without deciding that an exclusionary rule identical to the federal rule applies, but that is a question never treated so far as I know under the state constitution.

ZIMMERMAN, Justice (dissenting):

I dissent from the affirmance of the conviction for the reasons set forth in the opinion of Justice Durham. I write only to emphasize that this Court's uncritical following of *South Dakota v. Neville*, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983), is exactly the sort of slavish, copycat construction of parallel state and federal constitutional provisions that serves to undermine the separate integrity of state constitutions and state courts. When faced with a question under our state constitution, consideration of federal decisions construing a similar federal·constitutional provision is sound practice. However, if such decisions are to be followed, it must be because they persuade us of their correctness. Having read *Neville*, I consider it to be a result in search of a reason and quite unpersuasive in its conclusion that no compulsion was present.

---

**3.** The majority opinion observes in footnote 15 that "the courts which have considered their state statutes have found no violation of the privilege against self-incrimination under ... the relevant state constitution." In none of

those cases, however, was any analysis attempted of state constitutional law; all of those courts simply adopted without scrutiny the reasoning of *South Dakota v. Neville* and applied it to state constitutional provisions.

I concede that, as the Supreme Court noted in *Neville*, drunk driving is a major social problem that must be vigorously combatted, and I further concede that the compulsion at issue here is rather subtle in form. However, those facts cannot justify upholding legislation that plainly compels a citizen to give testimonial evidence against him- or herself.